IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| BRENDA MOSS MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 119-082 |
| | ) | |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff appeals the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I.    **BACKGROUND**

Plaintiff applied for DIB and SSI in October 2016, alleging a disability onset date of April 10, 2015.  Tr. ("R."), pp. 10, 224-36.  The alleged onset date is one day after an Administrative Law Judge ("ALJ") denied Plaintiff's prior DIB and SSI applications, a decision affirmed in a prior case filed in this Court.  R. 10-11; Martin v. Berryhill, CV 116-184, 2017 WL 4784380 (S.D. Ga. Sept. 12, 2017), *report and recommendation adopted by* 2017 WL 4782669

(S.D. Ga. Oct. 23, 2017) (Hall, C.J.).[1]  Plaintiff last met the insured status requirements of the Social Security Act for DIB on March 31, 2017.  R. 13, 243, 252.  Plaintiff was fifty-four years old on her alleged disability onset date and was fifty-eight years old at the time the ALJ issued the decision currently under consideration.  R. 47, 231.  Plaintiff alleged disability based on the following conditions:  herniated disc in neck C4, C5, C6, right hand problems, broken bone in right foot, surgery needed on left foot, and lower back pain.  R. 256.  Plaintiff completed high school, (R. 47, 257), and prior to her alleged disability date, had accrued a work history that included jobs as a seamstress and weaver, although Plaintiff's only past relevant work for purposes of her disability applications was as a weaver.  R. 27, 50, 63, 95, 109, 283, 365, 369.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration.  R. 10, 74-75, 125-26.  Plaintiff requested a hearing before an ALJ, (R. 149-50), and the ALJ held a hearing on June 12, 2018.  R. 44-73.  At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Chaddrick Middleton, a Vocational Expert ("VE").  Id.  On August 8, 2018, the ALJ issued an unfavorable decision.  R. 7-33.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since her alleged onset date of April 10, 2015, through her date last insured ("DLI") of March 31, 2017, and through the date of the administrative decision (C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).[2]

---

[1]In that prior case, the ALJ determined Plaintiff could not perform her past relevant work but could perform other jobs in the national economy, including production inspector, gas station cashier, and parking lot attendant.  Martin, CV 116-184, 2017 WL 478430, at *2.

[2]Plaintiff had to prove she was disabled on or before March 31, 2017, to receive DIB, but for her SSI application, the relevant period is the month Plaintiff applied (October 2016) through the date of the ALJ's decision (August 8, 2018).  See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*).

2. The claimant has the following severe impairments:  post-traumatic arthritis (left wrist); status post cervical spine fusion/C4-C6 radiculopathy; osteoarthritis (right shoulder) with impingement syndrome; mild right hip osteoarthritis in combination with remote ankle fracture involving the left calcaneus with degenerative changes in the subtalar joint, plantar fasciitis (right lower extremity), and degenerative changes (thoracic and lumbar spine); dyspepsia and disorder of the stomach; hypertension; and obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[3] (including lifting 20 pounds occasionally and 10 pounds frequently; sitting 6 hours; standing and walking for 6 hours), except that she is further limited as follows. She can only frequently: stoop, crouch, and kneel; never crawl; frequently balance; frequently climb stairs and ramps; never climb ladders, ropes, or scaffolds; frequently reach bilaterally in all directions including overhead; frequently: finger, feel, and handle; and frequently use hands and feet for operation of controls.  In addition, she must avoid concentrated exposure to vibrations and avoid concentrated exposure to extreme heat and cold.  There are no limits on hearing, seeing, or speech. The claimant is capable of

---

[3]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

performing past relevant work ("PRW") as a Plush Weaver as generally performed. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. §§ 404.1565 and 416.965).

R. 13-27.

Because the ALJ determined Plaintiff could perform her PRW as generally performed, the sequential evaluation process stopped, and the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from April 10, 2015, through the date of the decision, August 8, 2018. R. 27-28. When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ improperly (1) determined Plaintiff could perform her PRW, and (2) evaluated Plaintiff's subjective complaints. See Pl.'s Br., doc. no. 11. The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 12 ("Comm'r's Br.").

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

4

Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   DISCUSSION

The case should be remanded because the ALJ's determination Plaintiff is able to perform her PRW as a "plush weaver" is not supported by substantial evidence. Specifically, the ALJ did not, despite relying on the testimony of a VE, adequately explain why "plush weaver" more accurately describes Plaintiff's past relevant work than the other "weaver" positions listed in the Dictionary of Occupational Titles ("DOT").

### A.    Step Four of Sequential Evaluation Process

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (per curiam). Limitations are divided into three categories:  (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (per curiam) (citing 20 C.F.R. § 404.1569a(b)-(d)).

When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

### B. Identification of PRW

When a claimant has an RFC allowing for performance of her PRW as she actually performed it or as generally performed in the national economy, she is not disabled. 20 C.F.R. § 404.1560(b). The claimant bears the burden showing an inability to return to her PRW. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). However, the Commissioner has a duty to develop a full and fair record, including inquiring into the specific requirements and demands of a claimant's PRW. Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 (11th Cir. 2015) (*per curiam*); Nazario v. Astrue, No. 07-61833-CIV, 2009 WL 347424, at *16 (S.D. Fla. Feb. 11, 2009); see also Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1356 (11th Cir. 2018) ("In processing disability claims, the ALJs do not simply act as umpires calling balls and strikes. They are by law investigators of the facts, and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case.).

Social Security Ruling 82-62 further explains the duties of an ALJ to obtain information about a claimant's PRW to determine if she can perform such work:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982).

Social Security regulations state an ALJ may rely on the knowledge or expertise of a VE in determining whether there are jobs a claimant can perform. Specifically, an ALJ may consult a VE to determine whether past relevant work can be done: "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). The VE may also provide expert testimony in response to a hypothetical question about whether a person with certain physical and mental limitations can "meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." Id.; see also Simpson v. Comm'r of Soc. Sec., 423 F. App'x 882, 884 (11th Cir. 2011) (per curiam) ("The ALJ may rely on a VE's testimony regarding the physical and mental demands of the claimant's past work."). A VE need not produce detailed reports or statistics in support of his testimony, but there must be a reasoned basis for the testimony. Bryant v. Comm'r of Soc. Sec., 451 F. App'x 838, 839 (11th Cir. 2012) (per curiam); Thibeault v. Comm'r of Soc. Sec., No. 8:13-cv-586, 2013 WL 6498390, at *13 (M.D. Fla. Dec. 11, 2013).

### C.   Substantial Evidence Does Not Support the ALJ's Identification of Plush Weaver as Plaintiff's PRW

Plaintiff argues the ALJ did not properly assess her ability to perform PRW because the record does not contain an explanation why "plush weaver" was selected as her PRW when there

are multiple other "weaver" positions listed in the DOT, some of which have previously been used in classifying Plaintiff's PRW in this, and previous, cases.  Pl's Br., pp. 14-19.  The Commissioner's response does not address Plaintiff's argument directly, instead skipping directly to the general principle that an ALJ may, as was done here, rely on the testimony of a VE to determine a claimant can perform her PRW.  Comm'r's Br., pp. 14-18.  As described above, the Commissioner's position is a correct, general recitation of the law, but the Court recognizes the conspicuous absence of a specific explanation of how the ALJ, and VE for that matter, concluded the requirements and duties of a plush weaver matched the requirements and duties of Plaintiff PRW as a weaver.

First, the Court rejects Plaintiff's contention that a determination during proceedings on a prior disability application about Plaintiff's PRW, a determination which differs from the determination in the instant proceedings, is binding in this case.  Pl.'s Br., p. 16.  As the Commissioner explains, *res judicata* applies when a previous decision has been made on the same facts and on the same issue, but not when a different, previously unadjudicated period is under consideration and based on different facts.  Comm'r's Br., p. 17 (citing 20 C.F.R. § 404.957(c)(1) and collecting cases supporting same).  The current case alleged an onset date of April 10, 2015, one day after the prior ALJ's decision, and the prior applications were not reopened.  R. 11.  The record in this case contains additional information about Plaintiff's PRW, including work history reports submitted between 2016 and 2018, (R. 263, 265, 283, 309-10, 365, 369), and testimony offered by Plaintiff at the 2018 administrative hearing, (R. 49, 62).  As there are new facts since the prior administrative decision, *res judicata* does not require the ALJ in this case to adopt the prior determination about Plaintiff's PRW.

Second, although the ALJ was not bound to adopt the prior determination about PRW, as explained in detail above, he is required to explain how he identified Plaintiff's PRW. Indeed, SSR 82-62 recognizes the "far-reaching implications" of the determination on PRW and requires full development and explanation in the administrative decision. SSR 82-62, at *3. In this case, the state agency consultants reviewing Plaintiff's case to offer their expert opinions regarding the nature and severity of Plaintiff's impairments identified Plaintiff's PRW, based in part on Plaintiff's self-description of her PRW as having no other duties than walking around the machines to make sure they were running and filling them with packages of thread, duties which required her to crawl, (R. 80), as "weaver, narrow fabrics," DOT code 683.682.046. R. 84, 95, 109. These state agency experts determined Plaintiff could perform this work as generally performed in the national economy. R. 84, 95, 109. The DOT defines weaver, narrow products, in part, as: "Operates battery of looms to weave multiple widths of narrow fabric, such as ribbon or tape: Observes weaving to detect exhausted filling packages and replaces exhausted packages with full packages. Replaces defective shuttles, tension springs, and shuttle eyes, using handtools." DOT Job Descriptions, *available at www.govtusa.com/dot*; follow link *Machine Trade Occupations, 669.686-014 to 689.134-022*; select 683.682.046; last visited June 4, 2020.

Plaintiff's written description of her PRW included all-day kneeling, crouching, crawling, walking, standing, stooping, climbing, and handling or grasping big and small objects. R. 283, 310, 369. Plaintiff's testimony at the administrative hearing offered before the VE classified Plaintiff's PRW was limited to working as a weaver for twenty-one years, a job that required her to stand all day, lift thirty-five pounds. R. 49. When the ALJ started his questioning of the VE at the hearing, he asked the VE to classify Plaintiff's job as a

"weaver."   R. 50.   The ALJ did not clarify whether the VE had reviewed the record, including Plaintiff's written description of her PRW, (R. 283, 310), or whether the classification was based on the general description offered at the hearing opening. Nevertheless, the VE identified Plaintiff's PRW as "plush weaver," defined by the DOT, in part, as:

> Operates battery of looms to weave plush fabric:  Observes fabric being woven to detect weaving defects, such as exhausted filling, yarn breaks, or mechanical defects.  Pulls out broken filling and pushes shuttle through shed or pulls yarn through guides for rapier pickup to insert new pick.  Replaces exhausted packages with supply packages in creel.

DOT Job Descriptions, *available at www.govtusa.com/dot*; follow link *Machine Trade Occupations, 669.686-014 to 689.134-022*; select 683.682.030; last visited June 4, 2020.

When the ALJ presented his hypothetical questions to the VE, he reverted to the general term "weaver."  R. 63.  The ALJ described the PRW of his hypothetical individual "as a weaver, generally performed at light, semiskilled," but the hypothetical person performed the work at medium, semiskilled.  R. 65.  The ALJ included the RFC restrictions detailed in Part I, *supra*, including no crawling and avoiding concentrated exposure to vibrations, and he asked the VE if the hypothetical individual could do the job of a "weaver," as normally performed at the light level, or as performed by the hypothetical individual at medium.  Id.  The VE responded:

> Yes.  Your Honor.  The job exists at both the medium and the light level. However -- I'm sorry, Your Honor.  At the medium level, as performed, yes, does not exist, but however at the - - as generally performed, Your Honor, it is not available.  I'm sorry.  Excuse me, Your Honor.  At the medium level, the job is available.

R. 65-66.

The ALJ then changed the lifting requirements to light work but left other restrictions in place and asked if the hypothetical person could "perform the job of a weaver, as set forth in the Dictionary of Occupational Titles at the light exertional level?"  R. 66.  The VE responded without clarification on the weaver position listed in the DOT, "As generally performed.  Your Honor, yes."  R. 66.

The accurate identification of PRW is critical to the sequential evaluation process because if PRW is misidentified, the ALJ "effectively proceeds to step five in the sequential analysis" to determine whether there exists in the national economy substantial gainful employment other than a claimant's PRW.  King v. Astrue, No. 3:11-cv-142-J-TEM, 2012 WL 868874, at *4 (M.D. Fla. Mar. 14, 2012) (citation omitted).  Based on the exchange at the administrative hearing, the Court is unable to tell how the VE decided Plaintiff's PRW was "plush weaver," a determination upon which the ALJ relied in his written decision, despite reversion to use of the generic term "weaver" during the presentation of the hypothetical questions.  "Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable."  SSR 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982).  Moreover, the VE never actually testified the duties described by Plaintiff were consistent with the DOT description of a plush weaver, although he did respond affirmatively to the ALJ's request that he provide information consistent with the DOT.  R. 50.  The Eleventh Circuit has recently emphasized the ALJ may not simply ask a VE if his testimony is consistent with the DOT but must instead identify any discrepancy and detail in his decision how he has resolved the conflict.  Washington v. Comm'r of Soc. Sec., 906 F.3d at 1356.

12

It may be that the job of plush weaver is the most accurate description out of the multiple "weaver" positions in the DOT,[4] but the ALJ failed to explain why this job description was applicable in light of the information in the record about how Plaintiff performed her work and in light of the expert opinions of state agency consultants who classified Plaintiff's work under a different "weaver" code in the DOT.  The written decision cites several exhibits as supporting the conclusion Plaintiff can perform PRW as a plush weaver, but exhibit numbers without reference to the information contained therein does not add any clarity.  R. 27.  For example, one of the exhibits cited, B9D, is a Detailed Earnings Query, which lists Plaintiff's employer as Milliken & Company but does not appear to offer any description of the work Plaintiff performed for the company.  R. 247-50.  The decision also cites non-specified "Hearing Testimony," but as described above, the only testimony offered before the VE identified plush weaver as PRW is that Plaintiff performed the job of a weaver for twenty-one years, and the job involved standing and lifting "big packages of thread" weighing thirty-five pounds.  R. 49.  As one final example, exhibit B18E, is a one-page Work Background form where Plaintiff described the duties of her prior work as "weaver."  R. 365.

The issue is all the more troubling because, although the Court is not bound by a previous administrative decision, the prior appeal to this Court was based on an administrative decision that Plaintiff could not perform PRW but was instead able to perform work as a production inspector, gas station cashier, and parking lot attendant.  <u>Martin</u>, CV

---

[4]A brief review of the section of the DOT where plush weaver is located revealed at least nine other job titles containing the word "weaver":  683.682-010, 683.682-014; 683.682-022; 683.682-034; 683.682-038; 683.682-046; 683.682-050; 683.684-030; and 683.685-038.  <u>See</u> DOT Job Descriptions, *available at www.govtusa.com/dot*; follow link *Machine Trade Occupations, 669.686-014 to 689.134-022*; last visited June 4, 2020.

Case 1:19-cv-00082-JRH-BKE   Document 13   Filed 06/05/20   Page 14 of 15

116-184, 2017 WL 478430, at *2.  As set forth herein, the job descriptions for various types of weavers are similar, but as demonstrated in Appendix A to Plaintiff's brief, the physical demands differ in ways that are critical to Plaintiff's assessed RFC.  As Plaintiff points out, the weaver definition relied upon by the state agency consultants requires *constant* handling, reaching, and fingering, requirements inconsistent with the ALJ's RFC in this case that limits Plaintiff to *frequent* handling, reaching, and fingering.  R. 16.

Although the ALJ may rely on a VE to classify PRW, the record here is by no means clear how the VE reached his conclusion about a plush weaver, whether the VE followed through with consistent use of a plush weaver when answering hypothetical questions at the hearing, or what efforts, if any, the ALJ made to resolve the potential inconsistencies in the record with the plush weaver DOT code.  Accordingly, the case should be remanded because both the ALJ and VE failed to adequately explain - considering the record evidence and the RFC - the selection of plush weaver as Plaintiff's PRW.  See Barrio v. Comm'r of Soc. Sec. Admin., 394 F. App'x 635, 636 (11th Cir. 2010) (*per curiam*).  Lacking that adequate explanation, the Court cannot conclude substantial evidence supports the decision Plaintiff was not disabled because of an ability to perform the job of plush weaver as generally performed.

The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability applications.  However, for the reasons set forth above, the Court cannot affirm the administrative decision as supported by substantial evidence.  As such, remand is warranted.  The Court need not reach Plaintiff's remaining contention concerning the analysis of her subjective complaints.  Cf. Pendley v.

14

Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.")

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 5th day of June, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA